## SUPREME COURT.

### BROWER AND OTHERS agt. PEABODY AND OTHERS.

Where goods were contracted to be sold for a specified sum, payable on delivery, and were in pursuance of the contract delivered on board of a vessel, and receipts in the usual form were given by the officer of the vessel, stating they had been received from the seller, and the purchaser subsequently stole the receipts from the seller, and procured a bill of lading from the owners of the vessel in his own name—drew a bill of exchange against the shipment, assigned it to a third person, who in good faith advanced a large sum of money upon it; and the captain of the vessel, on demand, refused to deliver the goods to the seller, but delivered them to the holder of the bill of lading,

*Held,* in an action by the seller for possession of the goods, that although the receipts were stolen, it did not follow that the goods were, and under the circumstances the conduct of the purchaser in obtaining possession of the *property* should be deemed *fraudulent* rather than *felonious.* And the omission of the duty of the seller to caution the owners or master of the vessel of the stealing of the receipts by the purchaser, contributed to confer the apparent right of property in the purchaser. (MITCHELL, P. J., *dissenting.*)

*New-York General Term, Nov.* 1854.

MITCHELL, P. J. ROOSEVELT, and CLERKE, *Justices.*

The facts in this case are as follows : The plaintiffs made an agreement, in the regular course of business, with Lovett, one of the defendants, to sell to his firm (Thomas E. Lovett & Co.) fifty casks of potashes for $16,570.08. The terms were cash on delivery. After the agreement Lovett engaged freight on the potashes in the ship *Fidelia,* then advertised for a voyage to Liverpool ; and the plaintiffs, pursuant to their agreement, sent the potashes on board the vessel by their carman, who took receipts in the usual form from the mate—thirty-eight of the receipts stating the casks to have been received from Brower, one of the plaintiffs—the remaining twelve not stating from whom they were received. The delivery of the casks of potashes being completed, Lovett went to the office of the plaintiffs, and, seeing the receipts on the desk on which Brower was writing, stole and carried them away. In the course of the same day he presented them to the owners of the ship, and procured a bill of lading in his own name. Drawing a bill of

exchange against the shipment, he assigned the bill of lading to Richard Hasluck, who, in good faith, advanced to him, upon this security, the sum of $1,453.33. Peabody, the master of the ship, refused to deliver the potashes to the plaintiffs, but delivered them to the holders of the bills of lading in Liverpool.

By the court—CLERKE, J. It is maintained by the plaintiffs that the receipts having been stolen, their right to the possession of the goods cannot be affected by the felony.

A thief cannot make a title to stolen property, and the owner can reclaim it from any one, however innocent he might have obtained possession of it, and whatever may be the amount which he paid for it. If, for instance, the casks of potashes in question remained in the store of the plaintiffs, and the defendant Lovett stole them while in the store, and then deposited them on board the *Fidelia*, the master of the vessel would be undoubtedly under an obligation to restore them at once to the plaintiffs. By this rule, the law secures the right of the proprietor in personal chattels from being divested, in cases where he has done nothing to induce an innocent party to suppose the property to be in any other. But it would not be consistent with the policy of a commercial community to extend the rule beyond such cases; and in England this rule is in many circumstances practically nullified: for it is an old and familiar principle there that all sales and contracts of any thing vendable, in fairs or markets *overt* (open) shall not only be good between the parties, but also binding on all those that have any right or property therein; and in London every day, except Sunday, is a market day; and every shop in which goods are exposed publicly for sale is market *overt*, for such things only as the owner professes to trade in. Here we have no market *overt;* although the nature and extent of our commercial necessities render it equally desirable that innocent purchasers or bailees in a fair, open, and regular manner, should not be afterward subjected to difficulty in consequence of the knavery of the party who has transferred the goods to them. If we are, therefore, to modify the rule at all, instead of being extended, it should be restricted. In the present case it is con-

ceded that the *receipts* were stolen; but does it follow that this can be said of the property to which they relate? and I think the fallacy, so ingeniously presented on behalf of the plaintiffs, consists in not recognizing this distinction. The property, let it be remembered, was placed on board the *Fidelia* by the plaintiffs, without any communication with the owners; but, on the contrary, Lovett alone communicated with them, treating with them as the owners of it, and agreeing with them for the freight and transportation of it to Liverpool. The plaintiffs, pursuant to their agreement with Lovett, and *pursuant to Lovett's agreement with the ship-owners*, sent it to the place designated by Lovett, and, although they did not intend that the absolute property in the potashes should pass from them until the latter paid for it, yet is it consistent with the policy required by the usages and interests of trade to consider the appropriation of it, under such circumstances, actual larceny? It can scarcely be affirmed that the plaintiffs had done nothing, previous to the abstraction of the receipts, to beget a belief that Lovett had become the lawful owner of the shipment; so that Peabody, the master, knowing that his owners contracted to transport the goods, without any reference to the plaintiffs, or any interposition on their part, supposed himself from the beginning to be the bailee of Lovett. Was there not at least some color of a delivery to him—not absolute, of course, but sufficient to negative the idea that the method by which the shipment was transferred was of the same felonious character as that by which the receipts were taken? By this delivery on board the vessel designated by Lovett, without any communication with the owners of the *Fidelia*, leaving them under the probable impression that there was at least a qualified ownership in him, and thus allowing him to assume some *indicia* of such right, his whole conduct in obtaining possession of the property should be deemed *fraudulent* rather than *felonious*, and although where property has been actually stolen, the remissness of the owner in not taking immediate steps to notify others of the theft cannot affect the character of the transaction itself; yet when considered in connection with the previous circumstances of the case, the

omission of the plaintiffs to caution the owners or master of the *Fidelia* of the stealing of the receipts by Lovett, contributed to confer the apparent right of property in him; and it was their duty, as it was entirely and effectually in their power, to set the defendants right on this point, without delay, as soon as they discovered that the receipts were stolen.

The judgment should be affirmed with costs.

The dissenting opinion of Judge MITCHELL is as follows:

MITCHELL, J.—The barrels of potashes belonged to the plaintiffs, and they never passed their title to Lovett or any one else. If no receipt for them had been given by the captain of the vessel, that title would still have remained in the plaintiffs. Such receipt was given and was in possession of the plaintiffs, and was stolen from them by Lovett. Then as no title can be acquired even in favor of a subsequent *bona fide* purchaser by the defendants from the true owner, the stealing of the receipt and its possession by a *bona fide* holder, gave no title against the true owner. Nor does the omission of the true owner to take the most judicious means to give notice to the defendant, the captain of the vessel, defeat the true owner's title. There should, I think, be a new trial, costs to abide the event.